**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 20-cv-00295-REB

ROLAND E. STRINGFELLOW,

    Plaintiff,

v.

ANDREW M. SAUL, Commissioner of Social Security,

    Defendant.

**ORDER REVERSING DISABILITY
DECISION AND REMANDING TO COMMISSIONER**

**Blackburn, J.**

The matter before me is plaintiff's **Complaint** [#1],[1] filed February 4, 2020, seeking review of the Commissioner's decision denying plaintiff's claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.* I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument. I reverse and remand.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff alleges he is disabled as a result of degenerative disc disease and foot drop. After his application for disability insurance benefits was denied, plaintiff requested a hearing before an administrative law judge. This hearing was held on November 14, 2018. At the time of the hearing, plaintiff was 46 years old. He has a

---

[1] "[#1]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

high school education and past relevant work experience as a forklift operator, packager, industrial truck operator, and a material handler.  He has not engaged in substantial gainful activity since at least April 23, 2015, his amended alleged date of onset.

The ALJ found plaintiff was not disabled and therefore that he was not entitled to disability insurance benefits.  Although the evidence established plaintiff suffered from severe impairments, the judge concluded the severity of those impairments did not meet or equal any impairment listed in the social security regulations.  The ALJ found plaintiff had the residual functional capacity to perform a reduced range of sedentary work with certain postural and environmental limitations.  Although this finding precluded plaintiff's past relevant work, the judge determined there were other jobs existing in sufficient numbers in the national and local economies he could perform.  She therefore found plaintiff not disabled at step five of the sequential evaluation.  Plaintiff appealed this decision to the Appeals Council.  The Council affirmed.  Plaintiff then filed this action in federal court.

## II.  STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if his physical and/or mental impairments preclude him from performing both his previous work and any other "substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2).  "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination."  *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)).  However, the mere existence of

a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a quinquepartite sequential evaluation process for determining whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The ALJ must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform his past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 404.1520(b)-(f). *See also Williams v. Bowen* 844 F.2d 748, 750-52 (10th Cir. 1988). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Commissioner to show that

the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Secretary of Health and Human Services*, 961 F.2d 1495, 1497-98 (10th Cir. 1992); *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown*, 912 F.2d at 1196. It requires more than a scintilla but less than a preponderance of the evidence. *Hedstrom v. Sullivan*, 783 F.Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner. *Id.*

### III.  LEGAL ANALYSIS

Plaintiff maintains the ALJ failed to carry her burden of proof at step five to show there were jobs existing in significant numbers in the national economy he could perform given his residual functional capacity. Specifically, plaintiff argues two of the

three jobs on which the ALJ relied were inconsistent with her conclusion that he could perform only unskilled work, while the third exceeded the ALJ's restriction to sedentary work. In these respects, he is right.

Relying on the testimony of a vocational expert, the ALJ found at step five of the sequential evaluation that the jobs of Telephone Sales, Order Clerk, and Assembler of Small Parts were compatible with plaintiff's residual functional capacity. (Tr. 20.) However, while the Telephone Sales and Order Clerk jobs are listed as sedentary in the *Dictionary of Occupational Titles* ("DOT"), based on their Specific Vocational Preparation ("SVP")[2] ratings, both are considered semi-skilled work.[3] As to those jobs, therefore, transferability of skills became a relevant issue. **See Social Security Ruling** 82-41, 1982 WL 31389 at *1 (Jan. 1, 1982) ("Transferability of skills is an issue only when an individual's impairment(s) . . . prevent the performance of past relevant work (PRW), and that work has been determined to be skilled or semiskilled.").[4] **See also** ***Ortega v. Berryhill***, 2018 WL 1972677 at *5 (D.N.M. Apr. 26, 2018). The Commissioner bears the burden of proving that the claimant has transferable skills. 20 C.F.R. § 404.1512(b)(3). **See also *Haddock v. Apfel***, 196 F.3d 1084, 1088 (10th Cir. 1999); ***Cantu v. Colvin***, 2017 WL 1488313 at *3 (D. Colo. April 26, 2017).

---

[2] "SVP is defined as 'the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.'" ***Dikeman v. Halter***, 245 F.3d 1182, 1186 (10th Cir. 2001) (quoting United States Department of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles*, App. B, B-1 (1993) [hereinafter "*Selected Characteristics*"]).

[3] Using the skill level definitions provided in the Commissioner's regulations at 20 C.F.R. § 404.1568, "unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT." **Social Security Ruling** 00-4p, 2000 WL 1898704 at * 3 (SSA Dec. 4, 2000).

[4] The majority of plaintiff's past relevant work also was considered semi-skilled. (**See** Tr. 19.)

5

The ALJ, however, did not address whether plaintiff had acquired skills from his previous work which were transferrable to the alternative jobs she identified at step five.[5]  (*See* Tr. 19 (finding "[t]ransferability of job skills is not material to the determination of disability").)  In effect, therefore, the ALJ found plaintiff could perform only unskilled work.  *See* **Program Operations Manual System** ("POMS"), DI 25015.015(A)(3)(c) ("When a person's acquired skills are not transferable, he or she is considered to be capable of adjusting to only unskilled work.") (available at: https://secure.ssa.gov/poms.NSF/lnx/0425015015) (last accessed August 28, 2020).[6]  Because the ALJ failed to consider the transferability of plaintiff's skills, her determination that plaintiff, with a residual functional capacity for no more than unskilled work, could perform these two semi-skilled jobs is not supported by substantial evidence.  *See Cantu*, 2017 WL 1488313 at *3-*4; *Rice v. Colvin*, 2013 WL 1286186 at *2-*3 (E.D. Okla. March 26, 2013); *Macarages v. Astrue*, 2010 WL 3749468 at *2-*3 (W.D. Okla. Aug. 23, 2010), *adopte*d, 2010 WL 3749455 (W.D. Okla. Sept. 21, 2010).

The third job identified by the vocational expert on which the ALJ relied – Assembler of Small Products – is a light occupation.  Plaintiff was found to have the

---

[5] "An ALJ can find a claimant's acquired skills are transferable to other jobs 'when the skilled or semi-skilled work activities [the claimant] did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work.  This depends largely on the similarity of occupationally significant work activities among different jobs.'"  *Dikeman*, 245 F.3d at 1185 (quoting 20 C.F.R. § 404.1568(d)(1)).  When transferability of skills is an issue, "the acquired work skills must be identified, and specific occupations to which the acquired work skills are transferable must be cited in the . . . ALJ's decision."  **Social Security Ruling** 82-41, 1982 WL 31389 at *7 (SSA Jan. 1, 1982).

[6] The POMS is "a set of policies issued by the Administration to be used in processing claims."  *McNamar v. Apfel*, 172 F.3d 764, 766 (10th Cir. 1999).  The court "defer[s] to the POMS provisions unless [it] determine[s] they are 'arbitrary, capricious, or contrary to law.'"  *Ramey v. Reinertson*, 268 F.3d 955, 964 n.2 (10th Cir. 2001) (quoting *McNamar*, 172 F.3d at 766).

residual functional capacity for no more than sedentary work.  The vocational expert testified that a limitation to sedentary work would erode the occupational base for this job by 50%, still leaving 103,300 bench assembly jobs nationally.  (*See* Tr. 56; *see also* Tr. 20.)

The Commissioner recognizes that "[o]ccupational evidence provided by a [vocational expert] or [vocational specialist] generally should be consistent with the occupational information supplied by the DOT."  **Social Security Ruling** 00-4p, 2000 WL 1898704 at *2 (SSA Dec. 4, 2000).  The ALJ therefore has an affirmative duty to inquire as to the existence of any such conflict on the record.  *Id.* at *4.  The ALJ here did so inquire, and the vocational expert stated that his testimony was consistent with the DOT.  (Tr. 57.)

This testimony, however, was erroneous.  As plaintiff points out, the DOT does not segregate this job into light assembly jobs and sedentary bench assembly jobs.  In fact, the DOT provides that this job requires "[f]requent[] work[] at bench as member of assembly group assembling one or two specific parts and passing unit to another worker" and refers to "bench assembler" as simply an alternative designation for the job. *See* **DOT** 706-684.022 (available at:  https://occupationalinfo.org/70/ 706684022.html) (last accessed August 28, 2020).  The vocational expert's explanation for the discrepancy between his testimony and the DOT therefore cannot be seen as a reasonable one. *See Haddock*, 196 F.3d at 1091 ("[T]he ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability.").

"When vocational evidence . . . is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the . . . evidence to support a determination or decision that the individual is or is not disabled." **Social Security Ruling** 00-4p, 2000 WL 1898704 at *4.  The failure of the vocational expert to identify or adequately explain the conflict does not absolve the ALJ of the burden of doing so. ***See Haddock***, 196 F.3d at 1090; ***Akbichi v. Berryhill***, 2018 WL 1737206 at *3 (D. Colo. Apr. 11, 2018).  There thus was no reasonable basis for the ALJ to conclude that some number of Assembler of Small Parts jobs were consistent with plaintiff's sedentary residual functional capacity.

Together with the absence of evidence to support the conclusion that plaintiff can perform the other two semi-skilled jobs identified by the vocational expert, this failure means the Commissioner failed to carry his burden of proof at step five to show there were a significant number of jobs in the national economy which were within plaintiff's residual functional capacity.  The Commissioner does not argue otherwise.  Instead, he argues these errors were harmless because, based on plaintiff's age, education, and residual functional capacity, he still would be considered not disabled under the agency's Medical-Vocational Guidelines (the "Grids"), 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.28.

This argument is a complete non-starter.  The Grids are tables that direct a determination of "disabled" or "not disabled" based on intersecting considerations of a claimant's age, work experience, education, and residual functional capacity. ***See Thompson***, 987 F.2d at 1487.  However, "the grids may not be applied conclusively in a given case unless the claimant's characteristics precisely match the

criteria of a particular rule." *Id.* (internal citations and quotation marks omitted).  More particularly, they are inapplicable "unless the claimant could perform the full range of work required of that . . . category on a daily basis and unless the claimant possesses the physical capacities to perform most of the jobs in that range."  **Hargis v. Sullivan**, 945 F.2d 1482, 1490 (10th Cir. 1991) (internal citations omitted).

That patently is not the case here.  Indeed, the ALJ explicitly found plaintiff could not perform the full range of sedentary work but instead had various postural and environmental limitations which made it inappropriate to rely on the very Grid rule the Commissioner invokes here.  (Tr. 19.)  The Commissioner attempts to circumvent this inconvenient fact by suggesting the ALJ's determination can be upheld because the various limitations she endorsed would have little impact on the sedentary job base for someone of plaintiff's age, education, and residual functional.  **See Social Security Ruling** 85-15, 1985 WL 56857 at *3 (SSA Jan. 1, 1985) ("If, despite the nonexertional impairment(s), an individual has a large potential occupational base, he or she would ordinarily not be found disabled in the absence of extreme adversities in age, education, and work experience.").

I am unpersuaded.  While it is true that "a nonexertional impairment can have a negligible effect on the range of jobs available, [t]he ALJ . . . must back such a finding of negligible effect with the evidence to substantiate it."  **Carr v. Commissioner**, 734 Fed. Appx. 606, 611 (10th Cir. May 29, 2018) (quoting **Talbot v. Heckler**, 814 F.2d 1456, 1465 (10th Cir. 1987)) (internal citations and quotation marks omitted).  The ALJ here made no such determination.

9

Accordingly, the disability decision cannot stand. Noting the Commissioner's failure to carry his burden of proof, plaintiff requests a directed award of benefits. The court has discretion in determining whether the remand for further proceedings or alternatively for an immediate award of benefits. **Nielson v. Sullivan**, 992 F.2d 1118, 1122 (10th Cir. 1993). That discretion is guided by considerations such as the length of time the matter has been pending, the number of prior administrative determinations, and the age of the claimant. **See id.**; **Ragland v. Shalala**, 992 F.2d 1056, 1060 (10th Cir.1993); **Morgan v. Colvin**, 68 F.Supp.3d 1351, 1358-59 (D. Colo. 2014). None of these considerations auger in favor of a directed award of benefits in this case. Plaintiff is still a relatively young man, and his claim for benefits has not been pending for an overly protracted period of time or been the subject to repeated administrative proceedings.

Moreover, the determination whether to direct an award ultimately turns on whether further proceedings would be useful or merely delay the receipt of benefits to which plaintiff is plainly entitled. **Harris v. Secretary of Health & Human Services**, 821 F.2d 541, 545 (10th Cir. 1987). While the Commissioner "is not entitled to adjudicate a case "*ad infinitum* until [he] correctly applies the proper legal standard and gathers evidence to support [his] conclusion," **Sisco v. United States Deptartment of Health & Human Services**, 10 F.3d 739, 746 (10th Cir. 1993) (citation and internal quotation marks omitted), "[t]he decision to direct an award of benefits should be made only when the administrative record has been fully developed and when substantial and uncontradicted evidence in the record as a whole indicates that the claimant is disabled

10

and entitled to benefits," *J.B.W. v. Saul*, 2020 WL 4429401 at *3 (D. Kan. July 31, 2020) (citation and internal quotation marks omitted).

That is not the situation presented in this case. If the Commissioner were an ordinary litigant, his failure to satisfy his burden of proof at step five would be dispositive, but he is not:

> The premise of [plaintiff's] position is that the Commissioner should be treated like any other *litigant* and that remanding and allowing new evidence would be giving the Commissioner an unfair advantage. The premise is not entirely correct. Because of the nonadversarial nature of Social Security disability determinations, the Commissioner is not a litigant and has no representative at the agency level. Indeed, the model is investigatory, or inquisitorial, rather than adversarial. It is the ALJ's duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits. At the ALJ level, the applicant is the only *litigant* presenting evidence. While the agency may have already generated evidence and the ALJ may generate more – for example, by sending the applicant for a consultative exam or by calling a medical or vocational expert – these experts function as consultants in the adjudicative process, assisting the ALJ in determining what the outcome should be. They are not experts retained in an effort to shore up an agency's litigation position. That is because, until the ALJ renders a decision on whether an applicant is disabled or not, the agency has not taken a final position.

*Seavey v. Barnhart*, 276 F.3d 1, 8 (1st Cir. 2001) (emphases in original).[7] The ALJ's error here was in failing to fully develop the record as to whether plaintiff is disabled *vel non*. *See Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006). In the context of a

---

[7] The Tenth Circuit likewise has rejected the proposition that "where the [Commissioner] does not meet his burden at step five of the disability determination process, an automatic reversal and remand for award of benefits rather than a remand for additional fact-finding is called for." *Harris*, 821 F.2d at 545 n.1.

social security hearing, that type of error represents "an adjudicator making a mistake, not a party litigator failing to present evidence." ***Seavey***, 276 F.3d at 8. Because there still may be a significant number of alternative jobs in the national economy which are within plaintiff's residual functional capacity as determined by the ALJ, I find it inappropriate to direct an award of benefits in this case, but instead remand for further proceedings limited to addressing that specific issue.

## IV.  ORDERS

**THEREFORE IT IS ORDERED** as follows:

1. That the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is reversed;

2. That this case is remanded to the ALJ, who is directed to

   a. Further develop the record regarding whether there are a significant number of jobs which plaintiff could perform given his residual functional capacity as previously determined, relying on vocational expert testimony as required;

   b. Reconsider her step five determination in light of this evidence; and

   c. Reassess the disability determination; and

3. That plaintiff is awarded his costs, to be taxed by the clerk in the time and manner required under Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1 and 28 U.S.C. § 2412(a)(1).

Dated September 1, 2020, at Denver, Colorado.

                                        **BY THE COURT:**

*/s/ Robert E. Blackburn*
Robert E. Blackburn
United States District Judge